UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY ALAN HAGEN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. SACV 15-1379-KK<br><br>MEMORANDUM AND ORDER |

Plaintiff Gary Alan Hagen ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to Title 28 of the United States Code, section 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I.

## **PROCEDURAL HISTORY**

On February 21, 2013 and April 5, 2013, Plaintiff filed applications for DIB and SSI respectively, alleging a disability onset date of March 1, 2012.

Administrative Record ("AR") at 148-60. Plaintiff's applications were denied initially on February 20, 2013 and upon reconsideration on July 25, 2013. Id. at 82, 83, 84-86, 88-91, 93-97. On September 20, 2013, Plaintiff requested a hearing before the assigned Administrative Law Judge ("ALJ"), which the Appeals Council granted. Id. at 102. On February 20, 2014, Plaintiff appeared with counsel and testified at a hearing before the ALJ. Id. at 31-47. A vocational expert and a medical expert also testified at the hearing. Id. On June 13, 2014, the ALJ issued a decision denying Plaintiff's SSI and DIB applications. Id. at 14-24.

On June 25, 2014, Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 8-10. On July 8, 2015, the Agency's Appeals Council denied Plaintiff's request for review. Id. at 1-4.

On August 31, 2015, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the parties' Joint Stipulation ("JS") filed September 26, 2016, which the Court has taken under submission without oral argument. Dkt. 26, JS.

## II.
## PLAINTIFF'S BACKGROUND

Plaintiff was born on October 16, 1961, and his alleged disability onset date is March 1, 2012. AR at 148. He was fifty-one years old on the alleged disability onset date and fifty-three at the time of the hearing before the ALJ. Id. at 31, 148. Plaintiff has four or more years of college education and work history as a safety equipment driver and as a teacher. Id. at 173. Plaintiff alleges disability based on: multiple organ failure, cardiovascular disease, congestive heart failure, kidney failure, diabetes, glaucoma, retinopathy, neuropathy, anemia, celiac disease, and cardiomyopathy. Id. at 172.

///
///
///

# III.
# **STANDARD FOR EVALUATING DISABILITY**

To qualify for SSI or DIB, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[1]
4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

See <u>Tackett</u>, 180 F.3d at 1098-99; <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

### A. STEP ONE

At step one, the ALJ found Plaintiff has not "engaged in substantial gainful activity since March 1, 2012, the alleged onset date." AR at 17.

### B. STEP TWO

At step two, the ALJ found Plaintiff had the following severe impairments: "diabetes mellitus with diabetic neuropathy, kidney disease stage III, hypertension, and history of congenital heart failure." <u>Id.</u>

### C. STEP THREE

At step three, the ALJ found Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." <u>Id.</u> at 18-19.

///
///
///

**D. RFC DETERMINATION**

The ALJ found Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.97(b) except: the claimant can stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. He can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, scaffolds, or ropes. The claimant can also read print found in newspapers.

Id. at 19.

**E. STEP FOUR**

At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a Teacher, Resource . . . which does not require the performance of work-related activities precluded by the claimant's residual functional capacity." Id. at 23.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents one disputed issue: Whether the ALJ properly considered Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms in determining the extent to which they limit Plaintiff's functioning. See JS at 4.

## VI.
## STANDARD OF REVIEW

Pursuant to Title 42 of the United States Code, section 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d 880, 885 (9th Cir. 2006) (citation omitted).

## VII.
## RELEVANT FACTS

### A. PLAINTIFF'S TESTIMONY

At the hearing on February 20, 2014, Plaintiff testified regarding his impairments and treatment.

Plaintiff testified he suffers from "shooting pain, burning pain . . . mostly in the lower part of [his] legs and feet," which can sometimes last for days. AR at 35.

Plaintiff testified that walking is difficult because it causes the pain to increase over time; thus, there are many days when he does not get out of bed, and even avoids walking to the bathroom "if [he] can help it." Id. at 39, 41. When he does leave his home, Plaintiff will ride the bus or he will "take a bike because walking hurts." Id. at 39. Although Plaintiff takes medication for the pain, he claims he has not noticed "any reduction yet." Id. at 35. In addition to the pain in his lower body, Plaintiff claims he also gets "cramping in his hands arbitrarily," which prevents him from opening things like jars and medicine bottles. Id. at 35-36.

Furthermore, Plaintiff testified he suffers from "extreme weakness and fatigue." Id. at 35. He testified that the "stabbing feeling of pain" and cramps in his legs causes him to wake up at night such that he "[a]lmost never" feels rested when he wakes up in the morning. Id. at 37. Because Plaintiff has difficulty sleeping through the night, he often takes naps during the day that can last anywhere from three to six hours. Id.

Lastly, Plaintiff testified he has suffered from diabetes since he was a teenager and is consequently insulin-dependent. Id. at 37-38. Plaintiff claims his diabetes causes difficulty with his vision, and thus, he has suffered "permanent damage to both of the eyes." Id. at 38. Plaintiff also stated he experiences pain and "the inability to focus with any reasonable amount of time." Id. According to Plaintiff, his vision problems make it difficult to read unless the print is "very, very large" or unless he has a "magnifier;" but even then, reading "takes quite a bit of time and [is] not always accurate." Id.

**B.   ALJ'S ADVERSE CREDIBILITY FINDING**

In his June 13, 2014 decision, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. at 22. In

support of this finding, the ALJ claimed: (1) the objective evidence does not support Plaintiff's allegations; (2) Plaintiff's daily activities undermined his testimony; and (3) Plaintiff's behavior at the hearing did not support Plaintiff's alleged symptoms. Id. at 19-23.

## VIII.
## DISCUSSION

### A. APPLICABLE LAW

If "the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." Robbins, 466 F.3d at 883 (citations omitted). The ALJ's credibility determination must be supported by "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).

The ALJ is required to engage in a two-step analysis. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Molina, 674 F.3d at 1112 (quoting Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)). "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." Id. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by

1 simply reciting the medical evidence in support of his or her residual functional
2 capacity determination").
3       "If the ALJ's credibility finding is supported by substantial evidence, [a
4 court] may not engage in second-guessing." Thomas, 278 F.3d at 959. However,
5 an ALJ's failure to give specific, clear, and convincing reasons to reject the
6 claimant's testimony regarding the severity of the symptoms is not harmless,
7 because it precludes the Court from conducting a meaningful review of the ALJ's
8 reasoning. Brown-Hunter, 806 F.3d at 489.

**B. THE ALJ FAILED TO CONSIDER THE OVERALL DIAGNOSTIC RECORD**

An ALJ must view a claimant's treatment records "in light of the overall diagnostic record," including where the records "consistently reveal that, despite some occasional signs of improvement" the claimant continued to suffer from symptoms. Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2013). In addition, the ALJ:

> has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. . . . Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.

Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotation marks omitted).

In this case, the ALJ found that "there is simply not enough evidence of debilitating impairments to make the allegations readily believable," and thus, "[t]he objective evidence does not support [Plaintiff's] allegations." AR at 22. However, in making this finding, the ALJ did not properly consider the overall diagnostic record. Specifically, the ALJ improperly disregarded treating physician

9

1 Dr. Debra Gutierrez's medical assessment and improperly relied on Plaintiff's
2 purportedly conservative treatment. Id. at 19-23.

### (1) THE ALJ IMPROPERLY REJECTED DR. GUTIERREZ'S ASSESSMENT

The ALJ gave little weight to the December 2013 assessment by Debra Gutierrez, M.D., one of Plaintiff's treating physicians. See id. at 21. Although the ALJ noted a treating physician's opinion is generally entitled to special weight, the ALJ found that Dr. Gutierrez's assessment did "not rise to the level of a medical opinion" because it was non-specific and did not address "the nature and severity of impairments, whether the impairments met the durational requirement, and the claimant's residual functional capacity." Id. at 21, 23. However, by rejecting Dr. Gutierrez's assessment, the ALJ ignored the extensive treatment Dr. Gutierrez provided Plaintiff and neglected to fulfill his duty to "fully and fairly develop the record." Tonapetyan, 242 F.3d at 1150.[2]

Dr. Gutierrez is Plaintiff's primary care physician. AR at 440. Earliest reports from the record indicate that Dr. Gutierrez had been treating Plaintiff since, at least, October 2011.[3] Id. at 484. From 2011-2013, Dr. Gutierrez treated Plaintiff on six different occasions. Id. at 450, 455, 463, 470, 473, 484. In December 2013, after conducting an assessment of Plaintiff's medical conditions, Dr. Gutierrez opined Plaintiff was suffering from "DM retinopathy [and] neuropathy," and that due to "leg pain [and] vision loss," Plaintiff would not be able to return to work until June 9, 2014. Id. at 573.

---

[2] An ALJ will seek additional evidence or clarification when the evidence received from the medical source presents an insufficient basis from which to make the disability determination. See 20 C.F.R. §§ 404.1512(e); 416.912(e) (2011). This occurs "when the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Id.; Gomez v. Colvin, No. 1:14-CV-00425-SMS, 2015 WL 4617401, at *9 (E.D. Cal. July 30, 2015).

[3] Although the record only provides medical records dating back to October 2011, a note from Dr. Charles Suh, Plaintiff's cardiologist, references "labs from Dr. Gutierrez's office from 2005." AR at 437.

As a general rule, for disability determinations, the opinion of a treating physician is preferred over the opinion of a non-treating physician. Orn, 495 F.3d at 631; see 20 C.F.R. § 404.1527. "[A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." S.S.R. 96–2p, 61 Fed. Reg. 34, 490, 34, 491 (July 2, 1996); Orn, 495 F.3d at 632.

If the ALJ determines the treating physician's opinion is not well-supported by medical evidence, the Administration instructs the ALJ to "consider specified factors in determining the weight it will be given." Orn, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." Id.; 20 C.F.R. § 404.1527(d)(2)(i)-(ii).

On the other hand, if the ALJ determines the treating doctor's opinion is contradicted by another doctor, the ALJ still cannot reject the treating doctor's opinion unless the ALJ provides "specific and legitimate reasons" supported by substantial evidence in the record. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Lastly, "[w]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (quoting Murray, 722 F.2d at 502).

In this case, the ALJ rejected Dr. Gutierrez's assessment because he found her assessment was "non-specific" and did "not rise to the level of a medical opinion." AR at 21, 23. Other than finding Dr. Gutierrez's opinion incomplete and lacking in detail, the ALJ did not cite any reasons for failing to give controlling weight to Plaintiff's primary treating physician. The ALJ did not refer to other

treating physicians whose opinions contradicted Dr. Gutierrez's, nor did he cite to any objective medical evidence that contradicted Dr. Gutierrez's findings. In fact, looking at the record, it appears that there is objective medical evidence that is both consistent and supportive of Dr. Gutierrez's December 2013 assessment. For example, Dr. Gamal's diagnosis of peripheral neuropathy in the lower extremities and subsequent prescription of Neurontin supports Dr. Gutierrez's conclusion that Plaintiff was suffering from leg pain. Id. at 620-21. Furthermore, Plaintiff's history of eye surgeries; Dr. Sean Adrean's conclusion Plaintiff has a history of "proliferative diabetic retinopathy" and "clinically significant macular edema;" and Plaintiff's own testimony that he has suffered permanent damage to his eyes supports the conclusion that Plaintiff was suffering from vision loss and DM retinopathy at the time Dr. Gutierrez made her assessment in December 2013. Id. at 38, 355, 358, 428-29.

Moreover, to the extent Dr. Gutierrez's assessment was not well-supported by the medical evidence, the ALJ cannot simply disregard a treating physician's opinion. See S.S.R. 96–2p; Orn, 495 F.3d at 632. Rather, as discussed above, the ALJ had a duty to consider "specified factors" – like the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship between the patient and the treating physician – in determining the weight" to give to the physician's conclusion. Orn, 495 F.3d at 631.

In this case, as discussed above, the record establishes that Dr. Gutierrez has been Plaintiff's treating physician for, at least two years, during which Dr. Gutierrez personally examined and treated Plaintiff on six separate occasions. AR at 450, 455, 463, 470, 473, 484. Furthermore, the record provides that Dr. Gutierrez is, in fact, Plaintiff's primary care physician, as well as the physician responsible for referring Plaintiff to various specialists. Id. at 440, 547. Thus, looking at the record as a whole, it is clear that Dr. Gutierrez had a lengthy history

1 and familiarity with Plaintiff's health problems.  As a result, her medical opinion
2 should have been entitled to greater weight than the ALJ assigned.

3       Lastly, even assuming Dr. Gutierrez's assessment lacked the necessary
4 information for the ALJ to make a definitive conclusion, this reason alone does not
5 provide the ALJ grounds to completely disregard a treating physician's assessment.
6 Rather, pursuant to an ALJ's duty to develop the record, the ALJ should have
7 sought additional evidence or clarification before coming to any conclusions.  20
8 C.F.R. §§ 404.1512(e); 416.912(e); Gomez, 2015 WL 4617401, at *9.
9 Consequently, because the ALJ rejected Dr. Gutierrez's assessment without
10 seeking additional information from her, he failed to fulfill his duty to develop the
11 record.

12     **(2)**   **THE ALJ ERRONEOUSLY RELIED ON PLAINTIFF'S PURPORTEDLY**
13            **CONSERVATIVE TREATMENT**

14       The ALJ found Plaintiff had a "limited history of treatment for his
15 impairments," which "suggests that he is not as limited as he alleges."  AR at 23.
16 While the ALJ acknowledged that Plaintiff was prescribed medication for his
17 impairments, he notes "the record indicates no evidence of the claimant
18 undergoing physical therapy, pain relief injections, or surgical intervention to treat
19 any of his impairments."  Id.  The ALJ further noted "the treatment record largely
20 reflects standard medical treatment for common, ordinary medical problems."  Id.
21 Consequently, "[t]he treating doctors did not see fit to refer [Plaintiff] to a
22 specialist and the diagnostic studies obtained were unremarkable."  Id.

23       However, in regards to the shooting and burning pain in Plaintiff's lower legs
24 and feet, the evidence shows that one of Plaintiff's treating physicians did actually
25 refer Plaintiff to a specialist.  See id. at 619-21.  Dr. Ole Opgaard, Plaintiff's
26 endocrinologist, referred Plaintiff to Dr. Reda Gamal, a neurologist.  Id.  Dr. Gamal
27 noted that Plaintiff complained of "numbness [and] tingling" in his "hands [and]
28

13

legs," and "leg cramps" that "tends to move" between his legs and feet "frequently while asleep." Id. at 619.

Due to Plaintiff's complaints, Dr. Gamal found it necessary to perform a nerve conduction and needle electromyography study of Plaintiff's right and left upper and lower extremities and cervical and lumbar paraspinal muscles. Id. at 620. Following the study, Dr. Gamal determined there was evidence of "severe mixed motor and sensory neuropathy of the upper and lower extremities." Id. Consequently, Dr. Gamal prescribed 300 mg of Neurontin and indicated that she would reevaluate Plaintiff in four to six weeks to increase the dose of medication as necessary. Id. at 619, 621. Thus, Plaintiff was not limited to conservative treatment for the cramping in his lower extremities, and the objective medical evidence provides support for Plaintiff's subjective symptoms.

Additionally, in regards to Plaintiff's vision, the evidence indicates Plaintiff has a long history of vision problems due to his diabetes and has received extensive treatment. Among other things, Plaintiff received three different surgeries over the course of one year to address his vision problems. Id. at 355, 358, 579. While the ALJ correctly noted that "since August 2013, the record includes no evidence of further intervention to treat [Plaintiff's] eye-related impairments . . . and the record includes no evidence to show worsening of claimant's vision since December 2012," the rejection of Plaintiff's testimony regarding his visual impairments due to a purported lack of objective evidence is not supported by record. Id. at 17, 19. Rather, the overall diagnostic record, including Plaintiff's continued treatment for his diabetes and lengthy and extensive medical history of "proliferative diabetic retinopathy" and "significant macular edema," supported Plaintiff's testimony regarding his visual impairments. Id. at 428-29.

Based upon all of these reasons, the ALJ failed to properly consider the overall diagnostic record in rejecting Plaintiff's testimony regarding the intensity, persistence, and liming effects of his symptoms.

C. **THE ALJ IMPROPERLY RELIED ON PLAINTIFF'S DAILY ACTIVITIES**

The ALJ also found Plaintiff's "activities of daily living are also not consistent with the alleged degree of impairment." Id. at 23. The ALJ noted Plaintiff "does laundry, grocery shopping, and cooking with a microwave," and that he even "rode his bike to an appointment" back in March 2013. Id. The ALJ concluded these activities all "suggest that [Plaintiff] has a better physical capacity than he stated in the record" and more specifically, that "he has the ability to perform work." Id.

An ALJ must make "'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn, 495 F.3d at 639 (brackets in original) (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)). "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [plaintiff's] credibility as to [plaintiff's] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)); see also Reddick, 157 F.3d at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Here, although the ALJ found Plaintiff's daily activities undermined his disability claims, the ALJ failed to explain how such activities contradict or undermine Plaintiff's allegations of disabling functional limitations. See Reddick, 157 F.3d at 722 (explaining only if a claimant's level of activity is inconsistent with his or her alleged limitations will these activities bear on credibility). Plaintiff testified that he "generally" does his own laundry and that he "generally" goes grocery shopping. AR at 40. Plaintiff stated that he does not usually cook for

15

1  himself, but rather microwaves his food or eats out when he can.  Id. at 39.
2  Plaintiff's ability to "generally" complete basic chores around his house is not
3  significantly inconsistent with his claims of fatigue and pain to support a conclusion
4  that Plaintiff's description of his limitations were exaggerated.  Furthermore, there
5  is nothing in Plaintiff's described daily activities that indicates such chores either
6  "comprised a substantial portion of [Plaintiff's] day, or were transferrable to a
7  work environment."  Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014); see
8  also Smolen, 80 F.3d at 1284 n.7 (recognizing that "many home activities may not
9  be easily transferrable to a work environment").

10         Perhaps most significantly, the ALJ failed to give any consideration to
11  Plaintiff's testimony regarding the days he is unable to get out of bed because of the
12  fatigue and pain he experiences.  See AR at 41.  While Plaintiff testified he
13  occasionally socializes by visiting with his family or going to Starbucks, he stated
14  these activities are contingent upon him having the energy to get out of bed.  Id. at
15  40.  Because walking can increase the pain, Plaintiff testified that on the days he is
16  unable to leave his bed, he will often take measures to avoid moving by, for
17  instance, keeping "a jug next to the bed so [he doesn't] have to get up" to go to the
18  bathroom.  Id.  Absent clear and convincing evidence not to trust Plaintiff's
19  testimony, there is no reason for the ALJ to discount this portion of Plaintiff's daily
20  activities.  An "ALJ may not cherry-pick evidence to support the conclusion that a
21  claimant is not disabled, but must consider the evidence as a whole in making a
22  reasoned disability determination."  Williams v. Colvin, No. EDCV 14-2146-PLA,
23  2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (citing Holohan v. Massanari,
24  246 F.3d 1195, 1207 (9th Cir. 2001)).

25         The ALJ's conclusion that "the [Plaintiff's] activities are also not consistent
26  with the alleged degree of impairment" is not supported by substantial evidence.
27  AR at 23.  Thus, the ALJ's reliance on Plaintiff's daily activities was an improper
28

basis for rejecting Plaintiff's testimony regarding the intensity, persistence, and liming effects of his symptoms.

**D.    THE ALJ IMPROPERLY RELIED UPON HIS OWN PERSONAL OBSERVATIONS OF PLAINTIFF AT THE HEARING**

Finally, the ALJ found Plaintiff "did not show any difficulty in focusing or concentrating when providing answers to questions or in volunteering information, at the hearing," and thus, concluded that Plaintiff's behavior further indicated Plaintiff was "not as limited as he alleges." Id. at 23.

Courts have often condemned reliance on what is known as "sit and squirm" jurisprudence due to a concern that "the ALJ, who is not a medical expert, may substitute his or her own lay judgment in the place of a medical diagnosis." Tobias v. Colvin, No. EDCV 13-1703-E, 2014 WL 2448916, at *5 (C.D. Cal. May 30, 2014) ("The reported fact that Plaintiff appeared to the ALJ to be able to concentrate and respond timely to questioning at the hearing is no substitute for the objective tests . . . performed."). On the other hand, although an ALJ cannot make any medical diagnosis based on his lay judgment of Plaintiff, the ALJ can assess the claimant's credibility, by using "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in his testimony. Fair, 885 F.2d at 604 n.5; Tonapetyan, 242 F.3d at 1148. However, in doing so, the ALJ must still give specific, convincing reasons if he chooses to reject the claimant's subjective statements. Fair, 885 F.2d at 602.

Here, in light of the objective evidence in the record supporting Plaintiff's claims of pain and fatigue, the ALJ's lay observations that Plaintiff failed to exhibit any outward symptoms during the hearing is an insufficient basis to find Plaintiff not credible. Furthermore, because the ALJ did not find any evidence of malingering, did not make any conclusions about Plaintiff's reputation for truthfulness, and did not cite any specific inconsistencies within Plaintiff's testimony, there was no reason for the ALJ to conclude Plaintiff's testimony was

17

untrustworthy.  Thus, the ALJ's reliance on Plaintiff's behavior at the hearing was an improper basis for rejecting Plaintiff's testimony regarding the intensity, persistence, and liming effects of his symptoms.

## IX.
## **RELIEF**

### A.  APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted).  "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

### B.  ANALYSIS

In this case, the record has not been fully developed.  The ALJ must reassess Plaintiff's credibility regarding the intensity, persistence, and limiting effects of his symptoms and their impact on the RFC determination.  Accordingly, remand for further proceedings is appropriate.

///
///
///
///
///

# X.
# **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: October 13, 2016

HONORABLE KENLY KIYA KATO
United States Magistrate Judge